**UNITED STATES of America**

v.

**Roger BALDERRAMA.**

**Crim. No. SA69CR41.**

United States District Court
W. D. Texas,
San Antonio Division.

Oct. 16, 1969.

---

Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Harvey L. Hardy, San Antonio, Tex., for defendant.

SPEARS, Chief Judge.

Roger Balderrama, the defendant, was indicted for refusing to submit to induction into the Armed Forces pursuant to an order of his local draft board, in violation of Title 50, United States Code App., Section 462(a).

Defendant filed a motion to dismiss the indictment, essentially on the grounds that his I–A classification was without basis in fact and was made on incorrect standards, and that the denial of a I–O classification was, therefore, arbitrary and void.

The complete draft board record of the defendant was put in evidence upon the motion. It constitutes the entire record in this proceeding.

The facts of record which bear on the issue involved may be summed up as follows:

Defendant was classified I–A on July 17, 1968, subsequent to his graduation from high school, and after he had submitted his "Special Form for Conscientious Objector" on July 16, 1968, pages 46–49, draft board record.

In this form he declared his belief, thus:

"I believe in Jehovah God because of his creation and of his written word, the Bible. I respect man's laws as long as they do not come into conflict with God's laws." (p. 46)

In responce to Q. 5, "Under what circumstances, if any, do you believe in the use of force?", defendant answered, thus:

"Only in self-defense where my immediate family is being attacked." (p. 47)

He describes the creed or official statements of his sect as regards participation in war as "neutral in war". (p. 48)

Defendant sought a personal appearance before the Board on August 6, 1968 and, after a mix-up which led to cancel-

lation of his first scheduled appearance, he did appear on September 11, 1968. After his personal appearance the Local Board No. 6 again classified him I–A.

The Report of Oral Information made by said draft board reporting on defendant's personal appearance before it, appears in the draft board record on pages 35 and 36.

On page 36 of the record a dialogue between the Chairman of the Board and the defendant is set forth, as follows:

"Registrant claims he opposes fighting in any way for the government or supporting the government, in any way.

"Mr. Atkins, our Board chairman, advised registrant he could take a job in lieu of induction.

"Registrant stated he could not because he would be working against his religion.

"Mr. Atkins: Could you help someone that needed your help?

"Registrant: Could only give 1st aid.

"The local board members explained to the registrant the benefits of accepting a job.

"Registrant refused."

The members of the draft board concluded that the defendant was not sincere, and this determination affirmatively appears to rest on several misconceptions as to the correct legal standards applicable in such cases. The reasons given (in effect) for the board's determination were:

1. "Registrant stated that he was opposed to fighting in any way for the government."

2. In response to the question: "Do you believe in the use of force?", the registrant answered: "Only in self-defense where my immediate family is being attacked."

3. "The local board members explained to the registrant the benefits of accepting a job. Registrant refused."

Opposition to "fighting in any way for the government" is not only not inconsistent with sincere conscientious objection, it is an inevitable result of such belief.

A willingness to use force in defense of one's self, or family, or religious co-workers, has repeatedly been held not to be inconsistent with conscientious objection. Ashauer v. United States, 217 F.2d 788 (9th Cir. 1954); United States v. Pekarski, 207 F.2d 930 (2nd Cir. 1953); United States v. Purvis, 403 F.2d 555 (2nd Cir. 1968).

As far as defendant's expressed refusal to "work" is concerned, as being inconsistent with his claim that he is a conscientious objector, the language of United States v. Wilson, 215 F.2d 443, 445 (7th Cir. 1954), makes it clear that such is not the case:

"In Pine v. United States, 4 Cir., 212 F.2d 93, 96, as in this case, the registrant was conscientiously opposed to military service in any form ' "including work contributing to the maintenance of the national health, safety or interest." ' And in that case, as here, the registrant had appealed from a I–O classification seeking a minister's status. In response to an argument similar to that advanced by the Government here, the court stated: 'It is absurd to assume that appellant intended to abandon his claim to exemption as a conscientious objector because he sought by his appeal the more complete exemption allowed ministers of religion * * *.' Moreover, Board Memorandum No. 41, as amended, quoted by the court in the Pine case, expressly provides that an appeal under such circumstances does not constitute withdrawal of a claim of conscientious objection. To the same effect see Jewell v. United States, supra [6 Cir., 208 F.2d 770]; Cox v. Wedemeyer, 9 Cir., 192 F.2d 920. We very recently rejected a similar argument in United States v. Close, 7 Cir., 215 F.2d 439."

■ The significance of these affirmatively *wrong* reasons given for concluding that defendant was not a conscientious objector is that the courts have held that, while a draft board or appeal board need not give reasons for its determination, if it does, and if such reasons are wrong, the board's decision is erroneous, and the court will not search out good reasons in the record to support it. Gatchell v. United States, 378 F.2d 287 (9th Cir. 1967); Owens v. United States, 396 F.2d 540 (10th Cir. 1968). The rule against weighing the evidence is a sword which cuts both ways.

The government has argued here that any such error or errors by the local draft board in this regard were cured by the hearing on appeal, and that the determination by the State Appeal Board amounted to a de novo classification of defendant as I-A, untainted with error.

■ Such is the general rule but it is not an inflexible one. In any event it is not applicable here, because it is not intended to deny a registrant due process of law, and where (as here) the record before the local board shows that the defendant was classified according to incorrect standards, a mere review of the same record by the appeal board does not necessarily supply the deficiencies in the record. Mintz v. Howlett, 207 F.2d 758 (2nd Cir. 1953); United States v. Stepler, 258 F.2d 310 (3rd Cir. 1958); Franks v. United States, 216 F.2d 266 (9th Cir. 1954).

As said in *Stepler,* supra:

"From this record we cannot tell whether the appeal board accepted the reasons given by the local board. Since the record is so unclear, we cannot say that the error of the local board was cured on appeal."

The rationale of the *Franks* case, supra, is strikingly applicable to the facts here. That case involved a Jehovah's Witness who was classified I-A although the local draft board apparently was willing to accord him an I-A-O classification if he had expressed willingness to accept the same. The Court said:

"We are not unaware of the high probability that Franks, had he been classified I-A-O, would nevertheless have refused induction and ultimately found himself indicted in much the same manner as has happened here. Perhaps the local board and the hearing officer and the appeal board also had the feeling that they might as well classify the appellant as I-A for the reason that like other Jehovah's witnesses he would probably refuse induction as a I-A-O.

"It is our view, however, that it was not for the local board, any more than it is for this court, to say that the registrant should not be placed in a certain classification merely because he did not want that classification or was seeking a lower class or would probably refuse to acquiesce in such a classification."

The argument was also made in *Franks* that the error discussed immediately above was cured on the "de novo" appeal. The Court said:

"The next question is whether in view of the fact that Franks took an appeal and was finally classified by the appeal board, any failure to comply with this regulation by the local board was cured under the doctrine of Cramer v. France, 9 Cir., 148 F.2d 801; Tyrrell v. United States, 9 Cir., 200 F.2d 8; and Reed v. United States, 9 Cir., 205 F.2d 216. We think that such was not the case. In White v. United States, 9 Cir., 215 F.2d 782, we pointed out the fact that in consideration of a claim of conscientious objection and of the question whether a registrant should be so classified, the personal appearance of the registrant before the local board is of major and commanding importance. The appeal board, notwithstanding it has the aid of a written report from a hearing officer, has no similar opportunity to judge of the genuineness, the sincerity and the extent of a registrant's con-

scientious objection to military service. *Therefore a registrant who fails to have a fair chance for his proper classification on his appearance before the local board has been denied something which cannot be cured through the action of the appeal board. Such was our holding in Knox v. United States, 9 Cir., 200 F.2d 398."* (Emphasis supplied.)

█ Careful consideration has been given to all of the contentions and authorities presented on both sides. This Court is convinced that the classification of defendant as I–A was based on erroneous grounds, and that, under the circumstances of this case, the error was not cured on the "de novo" appeal. Accordingly, the indictment must be dismissed.

Such dismissal is, of course, without prejudice to further draft board proceedings, with respect to defendant as a selective service registrant, which are not inconsistent with this opinion or the Selective Service law.