**Bernard Henry ASHAUER,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14304.**

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1954.

J. B. Tietz, Los Angeles, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Manley J. Bowler, Louis Lee Abbott, Manuel L. Real, Hiram W. Kwan, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WALSH, District Judge.

WALSH, District Judge.

Ashauer was convicted of violating the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. by knowingly failing and refusing to submit to induction into the armed forces of the United States. In this appeal, he contends that his final classification of I-A (available for military service) was invalid. If his contention is sound, then it follows that the order requiring him to submit to induction was invalid, also, and the conviction based upon his failure and refusal to obey the order cannot stand.

Ashauer registered with his local board on September 17, 1948, and returned his classification questionnaire to that body on September 22, 1949. In the questionnaire, he showed himself to be 19 years of age, a high school graduate, and employed in the production of automobiles. He signed Series XIV certifying that he was a conscientious objector and requesting that he be furnished the special form for conscientious objectors, Selective Service Form No. 150.

On January 2, 1951, he filed Form No. 150 in which he stated that he was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form and conscientiously opposed to participation in noncombatant training and service in the armed forces. He stated that his belief in a Supreme Being involved duties which to him were superior to any duties arising from any human relation and, to describe the nature of this belief and to support the same, he cited and quoted numerous passages from the Bible. He explained that he was a member of Jehovah's Witnesses, having been reared as such by his parents, and that he relied upon the Bible as his guide and upon Jehovah God and Christ Jesus as the great teachers. He pointed out that he was enrolled in the Theocratic Ministry School. He said he believed in the use of force for self-defense. He referred to his frequent and regular attendance at Bible meetings and his distribution of Bible literature as the actions of his life demonstrating the consistency and depth of his religious convictions, and he stated that he had given public expression to his views as a conscientious objector. He answered in the negative the question whether he had ever been a member of any military organization or establishment. He said that Jehovah's Witnesses have no creed, but that since he had consecrated himself to the service of God, he must remain entirely neutral when the nations of the world are involved in war; that he could not fight for any nation against another; and that Jehovah's Witnesses are neutral regardless of what nation they reside in. He gave a list of names and addresses of individuals who could supply information as to the sincerity of his professed convictions against participation in war. He filed along with Form No. 150 a booklet entitled "God and State" and the magazine *The Watchtower* for February 1, 1951.

This magazine described in detail the views of Jehovah's Witnesses with respect to participation in war.

On January 16, 1951, the local board classified appellant as IV-E (conscientious objector opposed to both combatant and non-combatant military service). On November 21, 1951, although appellant's status had not changed in any material particular and although no new or additional information regarding appellant had been placed in his file, the local board classified him as I-A. Appellant promptly objected in writing to his new classification, asking classification as I-O [1] and requesting a personal appearance before the local board to discuss his claim to that classification.

Appellant appeared personally before the local board on December 4, 1951, and submitted at that time a number of letters from persons in positions of authority in Jehovah's Witnesses vouching for his sincerity in his religious belief and in his conscientious objector claim. Contemporaneously with this personal appearance, the local board caused a memorandum of the same to be prepared and placed in appellant's file. The memorandum notes only that appellant was sworn, that he stated his sincerity in his belief to be such that he could go to jail rather than enter the military service, that he said the Biblical command "Thou shalt not kill" was a teaching of his religion, and that he presented to the board the letters from Jehovah's Witnesses authorities mentioned above. On the same date that he appeared personally before the board, he was again classified as I-A. Appellant appealed from this newest classification and filed an affidavit and a letter from fellow Jehovah's Witnesses supporting his conscientious objector claim. He filed, also, a letter stating that while he believed he was entitled to classification as IV-D (Divinity student) he was willing to accept classification as I-O.[2]

On January 14, 1952, after having reviewed Ashauer's file and determined that he should not be classified as either I-A-O or I-O, the appeal board referred the complete file to the Department of Justice for the purpose of obtaining an advisory recommendation from that Department. Following a hearing before a hearing officer the Department made a recommendation to the appeal board. The Department, in making its recommendation as to the action of the appeal board, did not question the sincerity of appellant's claim of conscientious objection nor the fact that it was based upon religious grounds, but it recommended against appellant's claim because he believed in the use of force for self-defense and because the Department considered that the views expressed in the February 1, 1951, issue of *The Watchtower* concerning his belief in theocratic warfare established that he was not a conscientious objector.

The appeal board denied the conscientious objector claim and placed appellant in Class I-A. In due course, notice of this classification was given to appellant and he was ordered to report for induction. He reported for induction on December 8, 1952, but refused to submit to induction. His indictment, trial, and conviction followed.

 We are concerned here with the validity of the final classification given appellant, i. e., that given him by the appeal board, Hinkle v. United States, 9 Cir., 216 F.2d 8; Goetz v. United States, 9 Cir., 216 F.2d 270, and our inquiry is confined to the issue of whether or not there was basis in fact for that classification. Only if the appeal board was without jurisdiction to classify appellant as it did (without basis in fact),

<hr>

1. Between the dates of Ashauer's classification as IV-E and his classification as I-A changes in Selective Service regulations had renamed the various classes of registrants so that what had been Class IV-E became Class I-O.

2. In Class I-O appellant would have been available for civilian work contributing to the maintenance of the national health, safety or interest. The significance of this fact is demonstrated by Tomlinson v. United States, 9 Cir., 216 F.2d 12, 18.

may this court afford him relief. Estep v. United States, 327 U.S. 114, 122, 66 S. Ct. 423, 90 L.Ed. 567.

■ If we could say that Ashauer's classification by the appeal board had as its sole basis the recommendation and report of the Department of Justice, much of what we detailed above regarding the proceedings prior to the time the case came to the appeal board could very well have been omitted. Construed fairly, that report can mean only that although Ashauer was sincere in the religious beliefs on which he based his claim to a conscientious objector classification, his belief in his right to use force for self-defense and his belief in the righteousness of engaging in theocratic warfare at the command of God rendered him one not "opposed to participation in war in any form." A classification predicated solely upon such a construction of the law is without basis in fact. Hinkle v. United States, supra; Taffs v. United States, 8 Cir., 208 F.2d 329; United States v. Hartman, 2 Cir., 209 F.2d 366; Annett v. United States, 10 Cir., 205 F. 2d 689; United States v. Close, 7 Cir., 215 F.2d 439.

■■ But it would be unsound, we feel, to ascribe the appeal board's action in this case exclusively to an adoption by it of the Department of Justice report. There are, it appears to us, factors in the case which militate against such a course. To begin with, before the case was referred to the Department, the appeal board, following Selective Service regulations, had reviewed the entire file and had determined that Ashauer was not entitled to be classified as a conscientious objector. Further, the appeal board was required to give consideration to, but it was not bound to follow, the recommendation of the Department;[3] and there is nothing in the case which compels us to conclude that the board surrendered its right to reach its own judgment as to the classification to be fixed for appellant. Consequently, we turn to a consideration of the evidence other than the Department report which was before the appeal board.

■ The evidence—and all of the evidence—upon which the appeal board could have based its classification of Ashauer was contained in his file which was before the board and, apart from the report of the Department of Justice, the contents of the file consisted of the material and information furnished by appellant, as detailed above, plus the memorandum of the local board regarding the personal appearance of appellant before it. When the material and information furnished by appellant is scrutinized, however closely, to discover a basis in fact for the classification, we find that evidence points toward no conclusion other than that appellant was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form. And if, in aid of the classification, we look to appellant's personal appearance before the local board, there is disclosed nothing to contradict the evidence furnished by appellant as to the sincerity of his beliefs. If anything which occurred at that interview, including Ashauer's demeanor or the manner in which he conducted himself, was inconsistent with or derogative of his avowal of conscientious objection, there is no hint of it in the board's memorandum regarding the interview.[4] Searching the entire record, as is our duty, we find therein no evidence of whatever nature which is incompatible with the claim of exemption and we must hold, accordingly, that appellant's classification as I-A was without basis in fact. Dickinson v. United States, 346 U.S. 389, 74 S. Ct. 152; Schuman v. United States, 9 Cir., 208 F.2d 801; Jessen v. United States, 10 Cir., 212 F.2d 897; United States v. Close, supra.

3. Selective Service System Regulations, Sec. 1626.25(c); 32 C.F.R. Sec. 1626.25 (c).

4. See White v. United States, 9 Cir., 215 F.2d 782, 787, and the discussion of that case in Pitts v. United States, 9 Cir., 217 F.2d 590.

An attempt is made in the government's brief to show a lack of sincerity or good faith on the part of the appellant by asserting alleged discrepancies between his statements to the Selective Service authorities and his testimony upon the trial. The effort is pointless. The classification is tested by what was before the appeal board and it can be neither validated nor destroyed by the testimony to which the government points.

The judgment is reversed.