UNITED STATES of America, Appellee,

v.

Carl Dean WILSON, Appellant.

No. 25606.

United States Court of Appeals, Ninth Circuit.

Jan. 8, 1971.

Rehearing Denied Feb. 8, 1971.

J. B. Tietz (argued), Los Angeles, Cal., for appellant.

John Walter (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Ed-ward J. Wallin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY, and ELY, Circuit Judges.

PER CURIAM:

Wilson was indicted, tried, and convicted for having violated 50 U.S.C. App. § 462, in that he had refused to report for civilian work as ordered by his local Selective Service Board. We affirm.

Wilson does not contest his classification as a conscientious objector (I-O). He contends, however, that the Board abdicated its responsibilities under the Act in relying on the State Director's list of acceptable civilian employments when it ruled that the work he himself suggested was not appropriate.

In Mang v. United States, 339 F.2d 369 (9th Cir. 1964), we held that there is no failure of due process or abdication of authority if a Local Board is *guided* by an approved list of acceptable civilian employment. Of course, the Board must also give consideration to a registrant's suggestions, even though not on the list, which meet the criteria of "contributing to the maintenance of the national health, safety, or interest." 32 C.F.R. § 1660.20(a). However, such required consideration is predicated on the submission, by the registrant, of some *specific* employment.

Wilson's offer to go on a musical tour of military bases and hospitals was commendable, and, in different circumstances, could have been deemed appropriate. As the offer was presented, however, it was so vague and ill-defined as to give the Board no alternative but to reject it. Wilson had arranged no definite commitments, had begun no formal negotiations, and had submitted no proof of his ability to speak for the other members of the musical group of which he was a member;[1] hence, the

1. For example, in his original suggestion that he be allowed to go on a concert tour in lieu of induction, Wilson described the job as follows:

"There is a need for Rock and Roll Groups to tour various Army Installations, State Mental Hospitals and Vietnam. The Beach Boys are willing to ren-

Board was fully justified in making its determination that Wilson's suggestion was unacceptable.[2]

Wilson's other contentions, involving alleged errors at trial, an independent claim for a fatherhood deferment, and the constitutionality both of the Viet Nam war and of the Selective Service Act, are without merit.

Affirmed.

---

der their services in touring these installations and institutions. The Armed Forces News has approached the Beach Boys on numerous occasions for their services and interest in touring various Army bases. The Armed Forces News has indicated the need for Rock and Roll groups to donate their services for the servicemen in Vietnam. The Beach Boys are willing to tour any and all Vietnam installations especially since our troops have requested and are desirous in seeing and hearing Rock and Roll groups. We are aware of the expenses involved in these type tours and are willing to render our services without any cost to our State Department. Our theatrical agents can arrange tours of this type under the auspicious [sic] of the State Department and Department of The Army as expeditiously as possible. The Beach Boys are most concerned in touring the State Mental Hospitals and having the various people in these institutions hear and have available Rock and Roll Groups in donating their time. As well as teaching these people the art of music writing, playing, formation of groups and music producing.

"Many Army Installations throughout the country have repeatedly inquired with our agents for the possible donating of Beach Boys services which we would like to fulfill.

"Since the Beach Boys have toured the World over the past five (5) years they have been approached by many servicemen asking and pleading for them to appear at their various Army Bases."

The job description was equally indefinite some four months later, when Wilson met with his Local Board and a representative of the State Director, pursuant to Regulation 32 C.F.R. § 1660.20 (c):

Board: " * * * How close are you to this tour in Viet Nam you mention."
Wilson: "We have been corresponding with Col. Beasley in Washington, D. C. and Col. Coray in New York and they want us to go help the fighting man and the services now, we are just waiting word from this Board."
Board: "How long have you been negotiating?"
Wilson: "There has been no negotiation as such, just waiting for authority from this board."
Board: "Are these colonels with the USO?"
Wilson: "I don't know, my manager handles all that."

2. The lack of specificity in the suggested employment distinguishes the present case from Burton v. United States, 402 F.2d 536 (9th Cir. 1968). Here, we need not reach, as we did in *Burton*, the validity of Board reliance on the State Director's list when confronted with a specific proposal for unlisted employment.